UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ALFRED MILLER,

                         Petitioner,

        -vs-                                    **DECISION AND ORDER**
                                                **No. 09-CV-6598(MAT)**

ANTHONY BOUCAUD,

                         Respondent.
_____

## I.    Introduction

        Alfred Miller ("Miller" or "Petitioner") has filed a petition
for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging
that he is being held in state custody in violation of his federal
constitutional rights. Petitioner is incarcerated as the result of
a judgment entered on March 10, 2004, in the Monroe County Court of
the State of New York, following a jury verdict convicting him of
Attempted Robbery in the Third Degree (N.Y. Penal Law ("P.L.")
§§ 110.00, 160.05) (two counts); Robbery in the Second Degree (P.L.
§ 160.10(1)); and Petit Larceny (P.L. § 155.25). For the reasons
set forth below, the request for a writ of habeas corpus is denied,
and the petition is dismissed.

## II.  Factual Background and Procedural History

### A.    The Trial

        The following is a summary of the testimony presented at
Miller's trial.

On June 1, 2003, Scott Chapman ("Chapman") was helping his then-girlfriend Jaimen Brill ("Brill") move into her apartment on Tracy Street. At about 2:45 a.m., he and Brill went out to her roommate's car to retrieve a tool so they could finish assembling a bed. As they were walking the approximately 100-yard-distance to the car, Miller approached them and asked if they had any money. Thinking it was "like a panhandle type of thing", Chapman "kind of just brushed him off" and said "no, we don't have anything." The couple continued walking down the street. However, Miller persisted, stating, "Come back[,] and what you got, I'm speaking to you, my time is valuable. . . ." It made Chapman somewhat nervous, so he gave the keys to Brill and told her to "walk a little bit quicker and – and hop in the car." <u>See</u> T.147-49.[1]

Miller then got into a red Dodge Neon, which Chapman recalled had a missing left taillight. After following Chapman and Brill to her roommate's car, Miller positioned his car so that it was blocking them in. <u>See</u> T.193-96. Miller got out and started yelling at Chapman and Brill again, stating that he needed money and saying something along the lines of "I'm not some – some punk, get down on the street and let me check you out. . . ." T.154. Miller then began making gestures which conveyed to Chapman and Brill that he might have a gun. In addition, Miller repeatedly threatened to go back to his car and retrieve his gun.

---

[1]

Numerals preceded by "T." refer to pages from the trial transcript.

At that point, Chapman was facing Miller on the sidewalk, Brill having managed to get into the driver's seat of her friend's car. Miller followed Chapman as he walked over to the passenger's side and got in the car. Miller "started slamming on the window with his fists . . . so hard [they] thought he was going to break the glass, screaming that he would fuck [them] up, he would kill [them], he would go to his car and get his gun." T.159. As soon as Chapman got into the car, he called 911 on his cell phone.

Miller finally ceased his assault on their car, returned to his own vehicle, and drove away. Chapman noted that Miller's car had the license plate "BNU 1116". T.16.

The second incident at issue occurred just shy of two hours later. At about 4:15 a.m., Thomas Herrington ("Herrington") was delivering bundles of newspapers to the ET Plus, a convenience store located on the corner of Clifford and Portland Avenues. As Herrington was sorting papers in the back of his car, he "sensed that there was something there." Herrington moved around to the rear of the car and "there was a guy standing there asking for change or cigarettes or something like that." T.217. Herrington told the man that he did not have either item.

Herrington then grabbed several bundles of newspapers and headed towards the store. He heard the man ask him again for money, and Herrington repeated that he did not have anything. As Herrington turned around, he could hear the "click" of his car door

-3-

being opened. Herrington dropped the newspapers and turned around to see Miller, his back turned to Herrington, facing inside Herrington's car. Herrington grabbed Miller, pulled him out of the car, and demanded to know what he was doing.

A scuffle ensued, and Herrington saw two men starting to get out of a red Dodge Neon parked behind Herrington's car. Herrington pushed Miller away, got into his car, and closed the door. As Herrington put the car into drive, Miller opened the back door and started removing bundles of newspapers. T.223. Miller then went over to the Dodge Neon, got in on the driver's side, and drove away. Herrington noted that the license plate number was "BNU 11 something". Herrington observed the Dodge Neon, which had a broken tail light, turn up Miller Street.

Having lived in that area for 25 years, Herrington knew that there were only two ways to exit Miller Street–Portland Avenue or Bay Street. Herrington proceeded up Portland to try to intercept the Dodge Neon, which had stopped on Second Street in between Pennsylvania Avenue and Central Park. Herrington then used a pay phone at the corner of Second Avenue and Central Park to call 911.

At about 4:30 a.m., Rochester Police Officer Michael Jones stopped Petitioner, who was driving a red four-door Dodge Neon with New York license plate number "BNU116" at an intersection. T.249, 262. There were two passengers in the car: Keisha Brown was seated in the front passenger seat, and Aries Spencer was seated in the

-4-

rear passenger seat. T.252, 254. On the top of the rear passenger seat were two bundles of newspapers. T.252, 262. The police contacted Herrington and drove him back to the ET Plus, where he positively identified Miller as the man who had been "nose to nose" with him during the robbery. T.230.

A few hours later, Chapman and Brill went to a Rochester police station and viewed three individuals during a showup identification. Chapman and Brill positively identified Miller but did not recognize the other two people. T.163, 202.

Miller testified at trial, acknowledging that he had had encounters with Chapman, Brill, and Herrington on June 1, 2003. Sometime after midnight, Petitioner drove Brown's red Dodge Neon to Tracy Street in Rochester to speak with his supervisor from work, whom he referred to as "Aaron". T.277-79. When Petitioner arrived at what he said was Aaron's house, he left Brown in the Neon with the engine running. T.281.

While on Aaron's porch, Petitioner saw Brill and Chapman looking into Brown's car. T.281-82. Petitioner then tried to approach Brill and Chapman, who walked away quickly. Upon returning to Brown's car, Petitioner discovered that he could not locate a container of change that he had kept in the car. T.284. Petitioner yelled at Brill and Chapman to come back. T.284. Petitioner then jumped into the Neon drove up to the couple to talk to them, but

they argued with him. T.285. Petitioner denied threatening anyone with a gun or possessing a gun. T.286.

After leaving Tracy Street, Petitioner and Brown drove to an after-hours party. When they left, they gave Spencer a ride. T.287, 290. On the way, they stopped at the ET Plus to put air in the car's tires but could not could not locate any quarters for the air compressor. T.306. Petitioner asked Herrington if he had a quarter and in response, Herrington "was kind of short" with him. T.288-89, 306. According to Petitioner, the two men started arguing, and Herrington "just dropped the papers" and drove away in his car. T.289-90. Petitioner went inside to use the bathroom, and when he returned, Brown told him that Spencer had put the newspapers in the Dodge Neon. T.307.

Petitioner surmised that Herrington must have had the paper route in the Central Park area of Rochester, so he suggested that they return the papers to him. T.291. While driving around, Petitioner spotted Herrington and called out to him, "Hey, we got your papers, do you want your papers?" T.292. In response, Herrington retorted, "No, you're going to get it now." T.292.

C.   **The Verdict and Sentence**

The jury returned a verdict convicting Miller of all charges submitted for its consideration[2]—two counts of attempted third

---

[2]

Prior to trial, the trial court had reduced the attempted first degree robbery charge to attempted third degree robbery. As the result of defense counsel's motion for a trial order of dismissal, the trial

degree robbery, one count of second degree robbery, and one count of petit larceny.

The trial court sentenced Petitioner, as a second felony offender, to indeterminate sentences of two to four years on the attempted robbery convictions, a determinate sentence of ten years to be followed by five years of post-release supervision on the second degree robbery conviction, and a one-year determinate sentence on the petit larceny conviction. All sentences were ordered to be served concurrently with each other.

### D.   The Direct Appeal

Represented by new counsel on appeal, Petitioner asserted that (1) the police precinct showups were unduly suggestive; (2) the trial erroneously denied the defense motion to sever certain counts in the indictment; and (3) the prosecutor impermissibly cross-examined Petitioner about his post-arrest silence. By Decision and Order dated September 28, 2007, the Appellate Division, Fourth Department, of New York State Supreme Court unanimously affirmed the conviction. People v. Miller, 43 A.D.3d 1381 (4th Dept. 2007).

Petitioner's appellate counsel sought leave to appeal to the New York Court of Appeals on the ground that the showups conducted at the police station were suggestive. See Respondent's Exhibit

---

court reduced the fourth degree grand larceny charge to petit larceny. T.313.

("Resp't Ex.") D. On January 24, 2008, a judge of the Court of Appeals denied leave to appeal. <u>People v. Miller</u>, 9 N.Y.2d 1036 (2008).

**E.   Collateral Motions**

Petitioner filed a <u>pro</u> <u>se</u> application for a writ of error <u>coram</u> <u>nobis</u> dated December 9, 2008, challenging appellate counsel's representation. <u>Coram</u> <u>nobis</u> relief was summarily denied by the Appellate Division.

Petitioner then filed a <u>pro</u> <u>se</u> motion to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10 , dated August 19, 2009. <u>See</u> Resp't Ex. G. Petitioner contended that his trial counsel was ineffective in failing to (1) object to the prosecutor's questions regarding Petitioner's post-arrest silence; (2) properly raise the claim that the showup identification procedure at the police station was unduly suggestive; (3) request a circumstantial evidence charge; (4) assert that the evidence was legally insufficient to establish guilt; (5) investigate a conflict between the prosecutor and Petitioner due to the fact they had a fight when they previously attended school together; and (6) investigate or question Brown or Spencer, who had been with Petitioner at time of his arrest.

By Decision and Order dated May 13, 2010, the trial court (Marks, J.) denied the motion. <u>See</u> Resp't Ex. I. The trial court found that Petitioner's first five claims were procedurally barred

under C.P.L. § 440.10(2)(c) because Petitioner could have raised those record-based claims on appeal but unjustifiably failed to do so. The sixth claim was denied pursuant to C.P.L. § 440.30(1) due to Petitioner's failure to submit sworn allegations of fact supporting each element of the claim. In any event, the trial court held—without addressing each of counsel's alleged errors individually—that Petitioner had received "meaningful representation" from his trial attorney. Also without addressing each of counsel's alleged errors individually, the trial court found that defense counsel's representation "did not fall below an objective standard of reasonableness, nor did the [Petitioner] prove that he was prejudiced by trial counsel's representation[.]" Resp't Ex. I at 4-5 (citing Strickland v. Washington, 466 U.S. 668, 688 (1984)). The Appellate Division denied leave to appeal on March 4, 2011.

**F.   The Federal Habeas Petition**

This timely habeas petition followed in which Petitioner asserts the following grounds for relief: 1) he received ineffective assistance of trial counsel; 2) the prosecutor engaged in misconduct by cross-examining Petitioner about his failure to provide to the police the exculpatory version of events he presented at trial. Petitioner contends that his trial counsel was ineffective for all the reasons claimed in his motion to vacate judgment. In addition, he asserts that counsel erroneously failed

-9-

to perform an adequate investigation into Petitioner's assertions concerning the reason why Petitioner was on Tracy Street on June 1, 2003.

## III. Exhaustion

A federal court may not consider the merits of a claim unless the petitioner has first given the state the "'opportunity to . . . correct' alleged violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (quoting Duncan v. Henry, 513 U.S. 364, 365 (1995)). To fulfill the exhaustion requirement, a petitioner "must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Id. at 29; see also Duncan, 513 U.S. at 365-66. "In New York, to invoke 'one complete round of the State's established appellate review process', a criminal defendant must first appeal his or her conviction to the Appellate Division, and then must seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal." Galdamez v. Keane, 394 F.3d 68, 74 (2d Cir. 2005) (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)).

### A.    Ineffective Assistance of Trial Counsel Claims

Respondent concedes that Petitioner has exhausted the following individual ineffective assistance of trial counsel claims by raising them in his C.P.L. § 440.10 motion: (1) failure to

object to the prosecutor's questions regarding Petitioner's post-arrest silence; (2) failure to argue that the precinct showup was unduly suggestive; (3) failure to request a circumstantial evidence charge; (4) failure to raise the claim that the evidence was legally insufficient in violation of Petitioner's due process rights; (5) failure to investigate whether the prosecutor was biased against Petitioner due to the fact they had a fight when they previously attended school together; and (6) failure to investigate or question Brown or Spencer, who had been with Petitioner at time of his arrest. Petitioner raised these claims in constitutional terms by citing <u>Strickland v. Washington</u>, 466 U.S. 668, <u>supra</u>, in his C.P.L. § 440.10 motion, and also presented them in federal constitutional terms in his application for leave to appeal to the Appellate Division.

Petitioner, however, did not exhaust the claim that trial counsel was ineffective assistance for failing to investigate the reason why Petitioner was on Tracy Street on June 1, 2003. Although Petitioner did not raise this claim in his C.P.L. § 440.10 motion, he may file a second C.P.L. § 440.10 motion asserting it. However, the Court declines to exercise its discretion to stay the petition and allow Petitioner to return to state court to satisfy the exhaustion requirement. <u>See</u> <u>Rhines v. Weber</u>, 544 U.S. 269, 277-78 (2005) (holding that it would be an abuse of discretion to stay a mixed petition where the petitioner has not shown "good cause" for

failing to exhaust all available state court remedies earlier; and the unexhausted claim is "plainly meritless"). Here, Miller has not shown good cause for his failure to exhaust his claim earlier, and absent such cause, the Court would abuse its discretion in granting a stay. See id.

Under 28 U.S.C. § 2254(b)(2), district courts now have the authority to deny a petition containing unexhausted claims "on the merits". See 28 U.S.C. § 2254(b)(2). That is the course the Court elects to follow in this case, since Miller's unexhausted ineffective assistance claim is without merit under any standard of review,[3] as discussed further below.

**B.   Prosecutorial Misconduct Claim**

Respondent argues that Petitioner has failed to exhaust his claim that the prosecutor engaged in misconduct by cross-examining Petitioner concerning his post-arrest silence. Although appellate counsel raised this claim in constitutional terms in his Appellate

---

[3]

The Second Circuit has not yet established a standard for denying unexhausted claims under 28 U.S.C. § 2254(b)(2), but all four districts in New York have applied the "patently frivolous" test for dismissing such claims. See, e.g., Love v. Kuhlman, No. 99 Civ. 11063, 2001 U.S. Dist. LEXIS 22572 (S.D.N.Y. Dec. 12, 2001); Cruz v. Artuz, No. 97 Civ. 2508, 2002 U.S. Dist. LEXIS 11150, 2002 WL 1359386 (E.D.N.Y. June 24, 2002); Toland v. Walsh, No. 02 Civ. 0399, 2008 U.S. Dist. LEXIS 24616, 2008 WL 820184 (N.D.N.Y. Mar. 26, 2008); Hammock v. Walker, 224 F. Supp.2d 544 (W.D.N.Y. 2002) (Larimer, D.J.). A minority of courts in this Circuit have denied such petitions when they do not raise even a colorable federal claim. See Hernandez v. Lord, No. 00 Civ. 2306, 2000 U.S. Dist. LEXIS 10228, 2000 WL 1010975, at *4 n.7 (S.D.N.Y. July 21, 2000) (discussing cases applying this standard) (internal quotation marks omitted). Under either of these standards, Petitioner's claims are meritless.

Division brief on direct appeal by citing relevant Supreme Court authority, appellate counsel did not specifically mention this claim in the application for leave to appeal to the Court of Appeals. See Resp't Ex. D. Instead, in the leave application, appellate counsel discussed at length only the claim concerning the suggestiveness of the precinct showup. Appellate counsel mentioned that the appellate briefs were enclosed but did not specifically request that the Court of Appeals review the other issues in those briefs. Under the pertinent Second Circuit authority, that was insufficient to fairly apprise the Court of Appeals that review was sought as to all the issues contained in the Appellate Division briefs. See, e.g., Ramirez v. Attorney Gen'l, 280 F.3d 87, 97 (2d Cir. 2001) (holding that citation to petitioner's attached Appellate Division brief referring only to "this issue" "was not, therefore, a request 'to consider and review' other issues raised in the referenced points of the brief"; noting that "[r]eferences to attached briefs without more will preserve issues only if the Court of Appeals is clearly informed that the reference is asserting issues in those briefs as bases for granted leave to appeal"). As such, the prosecutorial misconduct claim was not fairly presented, and it is unexhausted for purposes of habeas review.

The prosecutorial claim nonetheless must be deemed exhausted but procedurally defaulted because Miller is now procedurally

barred from fully exhausting the claim in state court. Miller has already used the one direct appeal to which he is entitled.[4] Collateral review of the claim is barred because it is a matter of record that could have been raised on direct appeal, but unjustifiably was not. Returning to state court to exhaust the claims by means of another C.P.L. § 440.10 motion, therefore, would be futile. See N.Y. Crim. Proc. Law § 440.10(2)(c) (mandating dismissal of C.P.L. § 440.10 motion if claim could have been raised on direct review).

Petitioner's procedurally defaulted prosecutorial misconduct claim may be reviewed by this Court only if he can demonstrate either: (1) cause for the default and actual prejudice resulting therefrom, or (2) that the failure to consider the claims will result in a "fundamental miscarriage of justice." Murray v. Carrier, 477 U.S. 478, 485, 495 (1986). The "fundamental

_____

[4]

By statute, New York law used to specifically provide for only a single application for direct review. Spence v. Superintendent, Great Meadow Corr. Fac., 219 F.3d 162, 170 (2d Cir. 2000) (relying on former New York Rules for the Court of Appeals § 500.10(a) (discussing leave applications for criminal appeals)). Section 500.10 has since been amended, and criminal leave applications are now addressed in N.Y. Ct. § 500.20. Although Rule 500.20 "does not specifically state that there may be only one application for appeal, see N.Y. R. Ct. § 500.20, such a restriction may be inferred," since "[b]oth Rule 500.20(d) and CPL § 460.10(5) provide a 30-day window for any such application to be filed; this time limit would be meaningless were multiple applications permitted." Colon v. Connell, No. 07 Civ. 7169(BSJ)(JCF), 2009 WL 2002036, at *6 n. 4 (S.D.N.Y. July 9, 2009); accord, e.g., Cunningham v. Conway, 717 F. Supp.2d 339, 365 (W.D.N.Y.2010) (collecting cases). In addition, Section 500.20(a)(2) provides that the leave letter must indicate that "that no application for the same relief has been addressed to a justice of the Appellate Division, as only one application is available[.]" N.Y. R. CT. § 500.20(a)(2).

miscarriage of justice" exception requires a showing of actual, not merely legal, innocence. Id. at 496; see also Schlup v. Delo, 513 U.S. 298, 325 (1995). Petitioner did not submit a reply to Respondent's opposition memorandum of law, and thus has not asserted that either cause or prejudice exists, or that there is new, reliable evidence that he is factually innocent of the claims of which he was convicted. As a result, Miller cannot overcome the procedural default, and the prosecutorial claim is dismissed as procedurally barred from habeas review.

**IV.  The Adequate and Independent State Ground Doctrine**

Respondent concedes that Petitioner has exhausted the following claims of ineffective assistance of trial counsel: (1) failure to object to the prosecutor's questions regarding Petitioner's post-arrest silence; (2) failure to argue that the precinct showup was unduly suggestive; (3) failure to request a circumstantial evidence charge; and (4) failure to raise the claim that the evidence was legally insufficient in violation of Petitioner's due process rights; (5) failure to investigate whether the prosecutor was biased against Petitioner due to the fact they had a fight when they previously attended school together; and (6) failure to investigate or question Petitioner's companions at time of his arrest. Respondent argues that because the C.P.L. § 440.10 court denied claims one, two, three, and four on the basis

of C.P.L. § 440.10(2)(c), they are procedurally barred under the adequate and independent state ground doctrine.[5]

Where a state court's judgment denying a claim is based on an adequate and independent state procedural ground, federal habeas review of that claim is usually prohibited. Coleman v. Thompson, 501 U.S. 722, 729-30 (1991); see also Harris v. Reed, 489 U.S. 255, 261 (1989). Here, the C.P.L. § 440.10 court's rejection of these claims under 440.10(2)(c) was "independent" as it was a clear holding based solely on a state procedural rule and was not intertwined with any federal question. See Cruz v. Berbary, 456 F. Supp.2d 410, 419 (W.D.N.Y. 2006) ("[T]he state court's unambiguous and explicit invocation of CPL § 440.10(2)(a) and § 440.10(2)(c) was 'independent' inasmuch as it did not implicate or depend on any rule of federal law.") (citing Williams v. Goord, 277 F. Supp.2d 309, 318 (S.D.N.Y. 2003) (holding that state court's decision denying C.P.L. § 440.10 motion was "independent" because its reliance on state law was "apparent from the face of the opinion")).

---

[5]

Respondent notes that the C.P.L. § 440.10 court also found that Petitioner's fifth claim-that trial counsel was ineffective because he did not investigate a purported conflict between the prosecutor and Petitioner-was barred under C.P.L. § 440.10(2)(c) because it could have been raised on direct appeal. In reviewing the trial transcript, however, Respondent failed to uncover facts in the record to support this claim. Therefore, Respondent notes, Petitioner could not have raised this claim on appeal. Accordingly, the C.P.L. § 440.10 courts reliance on C.P.L. § 440.10(2)(c) was unjustified, and Respondent correctly is not relying on the adequate and independent state ground doctrine to argue that this claim is procedurally barred. See Resp't Mem. at 41 n.6.

The next question is whether the procedural bar is adequate for purposes of habeas review. This requires asking whether the holding is based on a rule that is firmly established and regularly followed by the state courts in cases similar to Petitioner's. Ford v. Georgia, 498 U.S. 411, 423-24 (1991); accord, e.g., Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999). C.P.L. § 440.10(2)(c) is a procedural rule designed to prevent a defendant from using a collateral motion to vacate the judgment to take a belated appeal on an issue that was sufficiently apparent on the face of the record. Sweet v. Bennett, 353 F.3d, 135, 139 (2d Cir. 2003) (citing People v. Cooks, 67 N.Y.2d 100 (1986)). It is a firmly established and regularly followed procedural rule in New York. See Cruz v. Berbary, 456 F. Supp.2d at 419 ("The cases hold that both C.P.L. § 440.10(2)(a) and C.P.L. § 440.10(2)(c) can constitute 'adequate and independent' state procedural grounds barring federal habeas review.") (citing, inter alia, Levine v. Commissioner of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995) (holding that C.P.L. § 440.10(2)(c) is adequate and independent state ground)). Therefore, the Court concludes, under the circumstances presented here, the state law ground was adequate to support the decision of the state court. As both prongs of the adequate and independent state ground doctrine are satisfied, Petitioner's first four individual ineffective assistance of trial counsel claims are procedurally barred.

As discussed <u>supra</u> in Section III.B, Miller has not attempted to demonstrate cause, prejudice, or actual innocence. Accordingly, the first four of his ineffective assistance claims are subject to an unexcused procedural default. The Court dismisses them without reaching the merits.

**V.   Merits of Petitioner's Remaining Claims**

An unexcused procedural default precludes review on the merits of Petitioner's prosecutorial misconduct claim, as well as his first four ineffective assistance claims, as explained <u>supra</u> in Sections III.A, III.B, and IV. The only claims remaining for this Court's consideration are three claims of ineffective assistance based upon trial counsel's (1) failure to investigate whether the prosecutor was biased against Petitioner due to the fact they had a fight when they previously attended school together; (2) failure to investigate or question Brown or Spencer, who had been with Petitioner at time of his arrest; and (3) failure to investigate Petitioner's stated reason for being on Tracy Street on the night of the incident.

**A.   Ineffective Assistance of Trial Counsel**

The performance inquiry of <u>Strickland</u> examines the reasonableness of trial counsel's actions under "all the circumstances," <u>id.</u> at 688, from the perspective of trial counsel at the time, <u>id.</u> at 689. "Prejudice forms the second half of an ineffective assistance claim[,]" and requires showing that there is

"'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005) (quoting Strickland, 466 U.S. at 694; other citation omitted).  The habeas petitioner bears the burden of establishing both prongs of the Strickland test.  417 F.3d at 319 (citation omitted).

The Court discusses trial counsel's alleged errors in turn below.

### 1.   Failure to failure to investigate alleged conflict of interest on the part of the prosecutor

Petitioner contends that trial counsel was ineffective because he failed to investigate a conflict between the prosecutor and Petitioner arising from a fight they supposedly had they previously attended school together. The Second Circuit has explained that the type of situation alleged by Petitioner is more accurately described as an alleged deprivation of a "disinterested prosecutor" rather than as a conflict of interest. Wright v. United States, 732 F.2d 1048, 1056 n.7 (2d Cir. 1984). "The concept is not altogether easy to define[,]" id. at 1056, and "[i]t is a bit easier to say what a disinterested prosecutor is not than what he is[,]" id. The Second Circuit noted in Wright that a prosecutor is "not disinterested if he has, or is under the influence of others who have, an axe to grind against the defendant, as distinguished from the appropriate interest that members of society have in bringing

a defendant to justice with respect to the crime with which he is charged." Id.

Here, there is no suggestion that the prosecutor had any "special interest" in securing Miller's indictment and conviction. Significantly, Miller failed in state court, and has failed here, to substantiate the fight that allegedly took place between the prosecutor and himself when they were schoolmates. He has not, and cannot, show there was prosecutorial misconduct, much less an appearance of impropriety. The Court concludes that trial counsel was not ineffective in failing to investigate this baseless claim.

### 2.   Failure to interview Brown and Spencer

Petitioner contends that trial counsel was ineffective in failing to investigate or question Brown and Spencer, two of Petitioner's acquaintances who were with him at the time of his arrest. To successfully assert an ineffective assistance of counsel claim on the basis of a failure to investigate, "a petitioner must do more than make vague, conclusory, or speculative claims as to what evidence could have been produced by further investigation." Taylor v. Poole, 07-CV-6318-RJH-GWG, 2009 WL 2634724, at *14 (S.D.N.Y. Aug. 27, 2009) (collecting cases). Courts view claims of ineffective assistance of counsel "skeptically" when the petitioner provides the only evidence attesting to the import of a missing witness's testimony. Croney v. Scully, No. CV-86-4335, 1988 WL 69766, at *2 (E.D.N.Y. June 13, 1988) (citing United States v.

Cockrell, 720 F.2d 1423, 1427 (5th Cir.) ("[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy, and because allegations of what a witness would have testified are largely speculative.") (quotation omitted), cert. denied, 467 U.S. 1251 (1984)). Thus, a "[p]etitioner must show not only that the testimony would have been favorable, but also that the witness would have testified at trial." Id. (citing Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985) (citations omitted)).

Here, Petitioner has failed to substantiate the basis for his belief that defense counsel in fact failed to investigate or interview these witnesses. Moreover, Petitioner has never come forward with a sworn statement from either Brown or Spencer detailing the substance of their allegedly exculpatory testimony. Nor has Petitioner produced sworn statements from either Brown or Spencer averring that, if subpoenaed, they would have testified favorably for the defense. Petitioner thus has failed to show that trial counsel was deficient or that he was prejudiced by counsel's alleged omission in regard to Brown and Spencer.

### 3.  Failure to investigate why Petitioner was on Tracy Street on the night of the incident

Petitioner asserts that trial counsel prejudiced his defense by allegedly not investigating the reason why Petitioner claimed to be on Tracy Street on the night of June 1, 2003. As noted above,

Petitioner testified that he was on Tracy Street after midnight to stop by his supervisor's home to discuss his work schedule. Even if counsel had conducted an investigation and established that the supervisor in fact lived on Tracy Street, it would not have changed the outcome of the trial. By Petitioner's own account, his supervisor was not at home at the time of the incident. Therefore, the supervisor could not have offered any testimony to rebut the victims' testimony that Petitioner harassed them, demanded money, gestured as if he had a gun, and threatened to harm them.

### 4.   Cumulative Effect of Trial Counsel's Errors

"[T]he accumulation of non-errors does not warrant a new trial." United States v. Lumpkin, 192 F.3d 280, 290 (2d Cir. 1999) (citation omitted). Here, as discussed above the deficiencies attributed to Miller's trial counsel were not in fact errors at all. Thus, considering them in the aggregate does not change this Court's conclusion that Miller received effective assistance as guaranteed by the Sixth Amendment.

## VI.   Conclusion

For the foregoing reasons, the petition filed by Alfred Miller (Dkt. #1) is dismissed. Because Miller has failed to make a substantial showing of a denial of a constitutional right, the Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3) and FED. R. APP. P. 24(a)(3), that any appeal from this

Decision and Order would not be taken in good faith and therefore the Court denies leave to appeal as a poor person. See Coppedge v. United States, 369 U.S. 438, 445-46 (1962).

Any application for leave to appeal in forma pauperis must be made to the Second Circuit Court of Appeals in accordance with FED. R. APP. P. 24(a)(1), (4), & (5). See id. Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action.

**SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     Rochester, New York
           August 8, 2012

-23-